DAVID READY, Respondent, *v.* J. L. FULTON COMPANY, Appellant.

SALE — CONSTRUCTION OF CONTRACT. Where a written contract for the purchase and sale of stone provided that the vendor should furnish and the purchaser buy "not less than five thousand and no more than eight thousand cubic yards of stone," and "if more than five thousand yards are required, three weeks' notice is to be given for the extra amount," the vendor can only recover from the purchaser, in an action for a breach of the contract before 5000 yards had been delivered, damages for the difference between the quantity of stone actually furnished and the 5,000 yards specified in the contract, where it contains no agreement that the vendor should furnish the stone for any particular work, or to be used in any particular place, and no provision authorizing the vendor to furnish more than 5,000 yards unless the purchaser should give notice that more than that amount was required.

*Ready* v. *J. L. Fulton Co.*, 86 App. Div. 202, reversed.

(Argued October 10, 1904; decided November 22, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 17, 1903, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The action was to recover damages for the breach of a contract by which the plaintiff agreed to sell and deliver stone to the defendant. The plaintiff claimed upon the trial that under this contract there were eight thousand cubic yards of

stone sold. The defendant claimed that the quantity was but five thousand cubic yards. The court construed the contract in favor of the plaintiff, and the defendant excepted. It was conceded that the plaintiff had delivered 2,668 cubic yards, which, at the price specified, amounted to $9,072.34. Payments had been made amounting to $5,823.21, leaving a balance of $3,249.13. A dispute arose between the parties concerning the quality of the stone being delivered, whether it was delivered in accordance with instructions, the plaintiff contending that the stone was of the quality and kind required by the contract, the defendant alleging that it was not. When 2,668 cubic yards had been delivered the defendant refused to receive any more, alleging that the stone tendered was not such as it was entitled to under the contract. The plaintiff claimed that this refusal was unjustified, that he was wrongfully deprived of profits on the remaining 5,332 yards of the eight thousand yards, and claimed judgment for $8,581.13. On the other hand, the defendant claimed that the contract contained a warranty as to the stone sold and delivered, which had been broken, that it was entitled to recover damages, and sought to set off these damages against the unpaid balance due the plaintiff. The jury rendered a verdict in favor of the plaintiff for $5,977.40, which was $2,728.27 more than the balance unpaid for the stone actually delivered, and, consequently, must have been for damages to the plaintiff because of the defendant's refusal to receive the stone tendered.

The contract was as follows:

"Buffalo, N. Y., *August 2nd*, 1897.

"This agreement, signed in duplicate, by David Ready, of Oil City, Pa., and the J. L. Fulton Company of Chicago. Mr. Ready agrees to furnish and the J. L. Fulton Company agrees to buy not less than five thousand and no more than eight thousand cubic yards of stone from Ready's Quarries at Oil City, at a price of $3.40 per cubic yard, F. O. B. cars, Buffalo, W. N. Y. & P. R. R. delivery; and the stone to include all such stone as may be required for face stone,

bridge-seats, coping and backing.   If more than five thousand yards are required, three weeks' notice is to be given for the extra amount.   Mr. Ready agrees to start shipments on or about August 5th, of five cars per day, and to increase the same to an average of ten cars per day at any time thereafter, on one week's notice so to do.   Terms of payment: Pay by New York draft on the 25th of each month for all stone furnished in the preceding month.   The specifications for this work permit the use of stone from twelve to thirty inch courses; and it is agreed that stone is to be gotten out in as thick courses as possible under these specifications, as it is the essence of this contract to gain this point.   Stone is to be as well quarry-squared as practicable and all face stone to have beds of at least one and one-quarter times their rise.   All stone to be acceptable to the engineer and four thousand pounds railroad weight shall constitute a cubic yard of stone and be the basis of payment.

"(Signed) DAVID READY,

"J. L. FULTON COMPANY.

"By D. H. LAWTON, *Vice-Pres.*"

*John Cunneen* and *V. H. Riordan* for appellant.   The court erred in holding that the defendant contracted to purchase 8,000 yards of stone, whereas it only contracted to receive 5,000, and could in no event be held liable for not receiving stone in excess of 5,000 yards. (*Farquhar Co.* v. *N. R. M. Co.,* 87 App. Div. 329.)

*Charles A. Dolson* for respondent.   Under the contract the appellant was bound to purchase and the respondent to sell 8,000 cubic yards of stone if so much was required for the work in hand. (*Brawley* v. *U. S.,* 96 U. S. 171; *Miller* v. *Leo,* 35 App. Div. 589; *Dady* v. *O'Rourke,* 61 App. Div. 529; *N. Y. B. N. Co.* v. *K. C. El. Ry. Co.,* 37 App. Div. 460; *Bushnell* v. *C. C. Nat. Bank,* 10 Hun, 381; 74 N. Y. 290; *Albright* v. *Voorhees,* 36 Hun, 437; *Corse* v. *Peck,* 102 N. Y. 513.)

26

MARTIN, J.    Practically the only controversy between the parties necessary to be determined upon this appeal is the proper construction of the written agreement made by and between them for the purchase and sale of a quantity of. stone of not less than five thousand nor more than eight thousand cubic yards.    The defendant received less than five thousand yards and refused to accept more.    Therefore, the question is whether the plaintiff was entitled to recover damages for the defendant's not having received stone to the amount of eight thousand yards, or whether the recovery should be limited to the portion of the five thousand yards. which the defendant refused to receive.

By the provisions of the contract the plaintiff agreed to sell and the defendant to buy not less than five thousand nor more than eight thousand cubic yards of stone.    It then stated the price, the place where the stone was to be delivered, and that it was to include such as might be required for face stone, bridge seats, coping and backing.    Then followed the provision that "if more than five thousand yards are required," three weeks' notice should be given for the extra amount.

On the trial the court held as a matter of law and charged the jury that under the written agreement between the parties the defendant was obliged to receive the full eight thousand cubic yards of stone mentioned therein, that it was liable for damages in not having done so, and refused to charge that it was only obliged to receive five thousand yards.

Although parol evidence was introduced upon the trial, ostensibly to aid in the construction of the contract, that evidence was finally disregarded and rendered immaterial by the court in directly holding, as a matter of law, that the plaintiff was entitled to recover damages for the defendant's refusal to receive that portion of the eight thousand yards which it refused to accept.    That evidence was likewise disregarded by the Appellate Division, which also held that the contract was to be construed as one providing for the furnishing and purchase of all the stone required for certain work to be done by the defendant, the only limit being from five to eight thou-

sand cubic yards.   We are unable to perceive how this con-
tract·can be limited or extended by reason of the defendant's
necessity in regard to any particular job or work.   No work
.was described therein, none was referred to, or in any way
made to constitute an element of the agreement between the
parties.   The court below seems to have reached the conclu-
sion that the defendant's liability under this agreement was
governed, not by the language employed therein, but by some
unmentioned situation of the defendant and its necessities
under some particular contract, or in relation to some particu-
lar work that was being carried on or performed by it for
some third person.   We do not understand how it is possible
to extend or control this contract upon the theory that the
stone to be furnished by the plaintiff was required for some
particular work.   The argument is that the word " required "
as used in the contract refers not to the demand or require-
ment of the defendant, but to its necessities in performing
some individual contract.   We think the contract is not sus-
ceptible of any such construction.

It is to be observed that the written instrument executed
by the parties contains no agreement upon the part of either
the plaintiff or the defendant that the former shall furnish
the latter stone for any particular work, or to be used in any
particular place.   Nor does it contain any provision authoriz-
ing the plaintiff to furnish more than five thousand yards
unless the defendant should give notice that more than that
amount was required by it.   The contract is a mere personal
agreement between the parties, making no reference to any
particular work or particular condition of either the plaintiff
or the defendant.   By it the plaintiff agreed to furnish and
the defendant to receive and pay for at least five thousand
yards of stone at the price named.   Thus there was an abso-
lute agreement to purchase that amount of stone and no
more.   It then contains a conditional provision to the effect
that if more than five thousand yards were required by the
defendant, it should give the plaintiff three weeks' notice that
it would require such extra amount, thus plainly disclosing

that the contract was absolute to purchase five thousand yards, with an added provision that if an extra amount of three thousand yards should be required by the defendant, then a certain notice should be given by it to the plaintiff. Until such notice was given by the defendant requiring the extra three thousand yards of the plaintiff, the defendant was not obliged to accept more than five thousand yards, nor to pay any damages for not having done so.

As already suggested, this contract was clearly a personal one, containing promises on the part of each of the parties which were to be performed by him or it, with no reference to any particular business or contract. The provision that if more than five thousand yards were required three weeks' notice was to be given for the extra amount, shows that the three thousand yards were regarded by the parties as an extra amount which the defendant might or might not require, and it was to be received and furnished only in case it should be required by the defendant and the proper notice given. In other words, the requirement provided for by the contract was a requirement by the defendant, could only be rendered effective by notice furnished, and was not a necessity which should exist by reason of some contract or business which formed no part of the agreement.

The court below seems to have relied upon the decisions in *Miller* v. *Leo* (35 App. Div. 589; affirmed, 165 N. Y. 619) and *Brawley* v. *United States* (96 U. S. 168). An examination of those cases at once discloses that they have no bearing upon the question involved in this case, as the facts and the principles which were there applied are wholly unlike those involved or applicable here. In the *Miller* case the contract specifically related to material to be furnished for the erection of two houses, and the agreement between the parties was to sell and purchase all the materials of the class mentioned that were necessary or required for such building. There the amount and character of the materials were to be determined by the requirements of certain work; while in this case the agreement in no way related to any particular work or job to

be performed by the defendant, but the character and amount
of the material to be furnished were expressly provided for
by the contract.   As to five thousand cubic yards, the agree-
ment was absolute to purchase and sell.   As to the three
thousand it depended upon the defendant's option and its
giving notice requiring its delivery.   In the *Brawley* case,
when examined, it will be found that there the question as to
the amount of wood which was to be delivered was to be
determined by the post commander.   Although the amount
mentioned in the contract was eight hundred and eighty
cords, it was held that where the commander notified the con-
tractor that he required but forty, his determination was final,
and the government was not liable for any number of cords
beyond the forty delivered.

The case of *Farquhar Co.* v. *New River Mineral Co.* (87
App. Div. 329) is more nearly like the case at bar.   There
the contract was to sell from two to three hundred tons of
iron of a certain brand, and it was held that it obligated the
vendor to deliver two hundred tons in any event, and also an
additional one hundred tons if such additional quantity was
ordered by the vendee, and that the option with respect to the
one hundred tons could not be exercised by the vendor, but
only by the vendee.

We are of the opinion that the courts below erred in their
interpretation of the contract in suit; that the defendant was
required to accept only five thousand cubic yards, and, conse-
quently, that the plaintiff could recover damages for the non-
acceptance of only that amount less the amount furnished,
and that the judgment should be reversed.

The judgment should be reversed, and a new trial granted,
with costs to abide the event.

Bartlett, J. (dissenting).   The material portion of the
contract in this case reads: "Mr. Ready agrees to furnish,
and the J. L. Fulton Company agrees to buy not less than
five thousand and no more than eight thousand cubic yards of
stone from Ready's quarries at Oil City at a price of $3.40

per cubic yard, f. o. b. cars Buffalo, W. N. Y. and P. R. R. delivery ; and the stone to include all such stone as may be required for face stone, bridge seats, coping and backing. If more than five thousand yards are required, three weeks notice is to be given for the extra amount."

The word "required" in this contract is ambiguous, standing alone, and was fully explained by both parties at the trial.

It is alleged in the complaint that the defendant was engaged in constructing stone work for the Terminal Railway of Buffalo, which required a large quantity of stone. . This allegation is admitted in the answer and on the trial the defendant's counsel said : "I admit that the defendant used more than eight thousand yards of the kind of stone mentioned in the contract, and used them in the masonry of the Terminal Railway of Buffalo." (p. 48 of record.)

This record clearly discloses that the stress of the trial was on questions of fact. The plaintiff claimed that he had delivered 2,668 cubic yards of stone under the contract and that the defendant wrongfully refused to receive further deliveries. The defendant claimed in substance that the stone delivered was defective in quality and not quarried in the manner provided by the contract. These questions of fact were bitterly contested, the jury found for the plaintiff and the Appellate Division unanimously affirmed the judgment entered on the verdict.

It seems to me impossible, on reading the evidence, to reach any other conclusion than that the word "required" in the contract referred to the work on the Terminal Railway of Buffalo ; that more than eight thousand cubic yards of stone, of the kind mentioned in the contract, were required in the prosecution of that work, and that defendant's refusal to proceed under the contract was for the reasons already stated.

The effect of the admission above quoted was to render unimportant the ruling of the trial judge, as a question of law, that the contract on its face was for the sale of eight thousand cubic yards of stone. More than eight thousand cubic yards were required for the work contemplated by both

parties when they entered into this contract, and that portion thereof which was originally conditional became operative by reason of this fact and the stipulation conceding it.

The verdict of the jury for $5,977.40 was very favorable to the defendant under the circumstances. The sum of $3.249.13 thereof was for stone actually delivered, and the balance of $2,728.27, the amount of plaintiff's damages for stone undelivered, being one dollar per cubic yard, as testified to by him, only exceeds five thousand cubic yards by 396.27 cubic yards.

It is true that the amount of one dollar per cubic yard as plaintiff's profit, lost by defendant's refusal to accept further deliveries, was established by his own testimony. As there was no conflict as to the amount of his loss of profits, assuming that the defendant was bound to have accepted further deliveries, and there were no circumstances from which an inference against the fact testified to could be drawn, this court has held that the plaintiff's case, resting on his own evidence, does not require submission to the jury. (*Kelly* v. *Burroughs*, 102 N. Y. 93.)

In that case Judge DANFORTH said : "The mere fact that the plaintiff, who testified to important particulars, was interested, was unimportant, in view of the fact that there was no conflict in the evidence, or any thing or circumstance from which an inference against the fact testified to by him could be drawn."

It seems to me a great hardship that this plaintiff should be compelled to go down to another trial when the defendant stands before the court convicted of a breach of its contract and liable to respond in such damages as the plaintiff has sustained.

I vote for affirmance.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur with MARTIN, J.; BARTLETT, J., reads dissenting opinion.

Judgment reversed, etc.