SEABOARD BRICK CO. v. BONACCI et al.

(Supreme Court, Appellate Division, First Department. November 8, 1912.)

1. SALES (§ 405*)—CONTRACTS—COUNTERCLAIM BY BUYER.

A contractor to pave streets of a city with vitrified bricks bought bricks, and pending the question of the acceptance of the brick by the city the contractor notified the seller that he could get all the brick desired that would pass the city's test at the same price, and that, if the seller could not get the city to accept the brick, the contractor would order other brick. The seller sent bills to the contractor for the brick supplied and accepted by the city, and thereafter requested payment of the same, and the contractor never disputed the bills, and never made a demand on the seller for damages for having paid more for other brick to complete the contract with the city until he filed his answer in an action for the price of brick delivered by the seller. *Held*, that the contractor could not recover damages for the seller's breach of contract, since he either waived any claim to hold the seller to the agreement to supply the brick needed, or he construed the contract of sale not to require the seller to deliver any particular quantity of brick.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1147–1155; Dec. Dig. § 405.*]

2. SALES (§ 418*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.

The measure of damages for a seller's breach of contract to deliver brick sufficient to enable the buyer to complete his street paving contracts with a city is not the price the buyer actually paid for other brick without competition and without notice to the seller, and, in the absence of evidence of the fair and reasonable value of the brick bought after the seller ceased delivery, there is no basis for measure of damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

---

Appeal from Special Term, New York County.

Action by the Seaboard Brick Company against Dominick Bonacci and another, composing the firm of the Bonacci-Vincelli Contracting Company, and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Martin T. Manton, of New York City, for appellants.

Martin A. Ryan, of New York City, for respondent.

SCOTT, J. The question raised by this appeal relates to the disallowance by the trial court of defendants' counterclaim.

The defendant had a contract with the city of New York, executed on September 14, 1908, for laying vitrified brick gutters in certain streets in the borough of Richmond. On August 12, 1908, plaintiffs wrote to defendant a letter reading as follows:

"New York, August 12th, 1908.

"Bonacci-Vincelli Contracting Company, #672 Degraw Street, Brooklyn, N. Y.

"Gentlemen: We hereby agree to furnish you with our #1 Vitrified Shale Paving Block to be used on contracts #6, 7 and 8 awarded to you on July 28th, 1908, in the Borough of Richmond, S. I. at price of 97c per square yard over rail of barge at dock Staten Island, you to furnish suitable dock to discharge at. We guarantee brick to lay 45 blocks to the square yard and to meet with approval of engineers of the Borough of Richmond, S. I.

"Terms: Freight Net Cash $3.00 per M. on delivery of brick 2% off for cash 10 days or cash on balance on the City Engineers estimate or measurement.

"Truly yours,                          Seaboard Brick Company,
                                       "Schoonmaker & Rice,
                                       "Per Arthur Conners, Mgr."

This proposition the defendant accepted in the following terms:

"We hereby accept above offer for furnishing Vitrified Shale Paving Block to be used by us on contracts #6, 7 and 8 in the Borough of Richmond, S. I. on terms and conditions above stated.     Bonacci-Vincelli Contracting Co.
                                       "By Dominick Bonacci."

[1] Under this agreement, plaintiff furnished 2,713.10 square yards of brick which were accepted and used, and it is for their price that this action is brought. In November, 1908, the city's engineers refused to permit the use of any more of plaintiff's brick, whereupon defendant purchased from another source the balance of the brick required at a price in excess by $1,532 of the amount the plaintiff would have been entitled to receive for the same quantity of brick. For this excess the defendant counterclaims as for damages for the breach of the contract. The trial court dismissed the counterclaim upon the ground that the contract above quoted did not bind the plaintiff to deliver or the defendant to receive any particular quantity of brick, or all the brick to be used under the contract, but amounted to nothing more than an agreement fixing the price to be paid for so much brick as might be delivered and received. We are not agreed as to whether or not this is a correct construction of the contract, although it is plain that it differs substantially from the con-

tract construed in Miller v. Leo, 35 App. Div. 589, 55 N. Y. Supp. 165, upon which defendant greatly relies. It is not necessary, however, to construe the contract because we are of the opinion that the defendant expressly waived the default, if default there was, on the part of plaintiff. The court found that while the question of the acceptance of plaintiff's brick by the city's engineers was still pending defendant informed the plaintiff, through John D. Schoonmaker and Jacob Rice, that they could get all the brick they wanted that would pass the city's test at the same price as plaintiff had agreed to sell to them, and that, if plaintiff could not get the city to accept the cargo of 125,000 brick it then had at Staten Island, to let them know, and they would order other brick; that the plaintiff sent bills to the defendant for the brick supplied and accepted by the city, and thereafter requested payment of the same, and the defendant never disputed the bill; that the defendant informed the plaintiff through Jacob Rice that, if the lien had not been filed, the defendant would have paid plaintiff's bill for said brick so supplied and used; that the defendant never made a demand on plaintiff after plaintiff's letter of November 12, 1908, to furnish them with brick under the contract of August 12, 1908, and never made a demand, prior to filing their answer to this cause, for any loss on account of having to pay more for the brick to complete their contracts with the city than that stated in plaintiff's letter of August 12, 1908; that the said defendant purchased the balance of the brick required to complete the said three contracts with the City of New York, amounting to 10,942.92 square yards through one Willard, without ascertaining what was the market price of similar brick, or whether it could purchase the brick elsewhere cheaper.

These findings are amply supported by the evidence, and in our opinion they indicate either that defendant construed the contract as it has been construed by the trial court, or that it waived any claim to hold the plaintiff to an agreement to supply the brick needed. In either case the effect of the defendant's acts was to mislead plaintiff into supposing that defendant did not intend to hold it, and thus prevented plaintiff from making an effort to provide other brick acceptable to the city's engineers, as very possibly it would have done.

[2] Furthermore, the price the defendant actually paid for the brick without competition and without notice to plaintiff did not measure the damages recoverable. There was no evidence of the fair and reasonable value of the brick purchased after plaintiff had ceased delivering.

For these reasons, without passing upon the construction of the contract, we think that the judgment should be affirmed, with costs. All concur.