MAXWELL–DAVIS, INC. *vs.* CHARLES F. HOOPER.

Worcester. September 25, 1944. — October 24, 1944.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Contract,* Construction, Validity, Consideration. *Evidence,* Extrinsic affecting writing. *Practice, Civil,* Question of law or fact.

In an action upon a contract in writing between an advertising agency and the proprietor of a laundry providing that for certain payments the proprietor would receive the "'Dated Laundered Shirt' exclusive Franchise" in certain towns, evidence of the conduct of the parties under the contract and other evidence was admissible to explain the meaning of the words of the contract; and in the light of such evidence the contract was not too indefinite to be enforced.

Although testimony of the plaintiff in an action upon a contract in writing of uncertain meaning was to the effect that nothing was required of the plaintiff under the contract, the proper construction thereof, in the light of all the evidence admitted to clarify its terms, including evidence of the furnishing of services by the plaintiff to the defendant, was still a question of law for the court; and on such a construction there was no error in refusing a ruling requested by the defendant that the contract was void for want of consideration.

CONTRACT. Writ in the Third District Court of Southern Worcester dated November 19, 1942.

The action was heard by *Williams*, J., who found for the plaintiff.

*A. T. Handverger*, for the defendant.

*W. A. Murray, Jr.*, for the plaintiff.

DOLAN, J. This action of contract to recover damages for the alleged breach of a written contract comes before us on the defendant's appeal from the order of the Appellate Division dismissing the report.

There was evidence that on July 16, 1941, the parties entered into a written contract, under the terms of which it was provided that upon "accepting this Agreement" the defendant, who was engaged in the laundry business, would receive the "'Dated Laundered Shirt' exclusive Franchise" in Milford, Norwood, Franklin and Medway, that in consideration thereof the defendant would pay the plaintiff $325 per annum, payable $81.50 with the agreement and by further payments of $81.50 each for three successive months, and that thirty days after failure to meet any of the payments due the whole amount remaining unpaid should become forthwith due and payable. The contract further provided that it should "automatically be renewed for yearly periods and . . . continue under the same terms and conditions . . . [above] set forth, unless terminated in writing by either party and unless notice of such termination is received by either party at least thirty days prior to the termination of such yearly period," and that the date of signing the contract should for all purposes be deemed the date on which it should go into effect. There was also evidence that the plaintiff is engaged in the advertising business; that the words "Dated Laundered Shirt"

used in the contract referred to an advertising plan whereby it would be advertised that a new shirt laundered by the defendant would be guaranteed by him "to last a year"; that after the execution of the contract the plaintiff (on October 1, 1941) commenced to send advertising copy to the Milford Daily News, Franklin Sentinel and Norwood Messenger, consisting of worded material and cuts; that the defendant paid these newspapers for the printing of the advertisements; and that about September 1, 1942, the defendant talked with the plaintiff's president and vice-president and informed them that by reason of the uncertainty of his status "in the draft" the contract was to terminate on October 1, 1942. The evidence is conflicting with respect to whether this was agreed to by the plaintiff's representatives, but no written notice of the termination of the contract was given the plaintiff by the defendant. There was evidence that "The parties operated under the written contract from July 16, 1941 to July 16, 1942, service covering the period from October 1, 1941 to October 1, 1942," during which period the defendant made the payments to the plaintiff that were called for by the contract. The plaintiff's vice-president testified without objection that the frequency, size, and kind of advertising were wholly within the control of the plaintiff "so far as the written contract was concerned," that on the "written" contract the plaintiff did not have to furnish any advertising, and that the plaintiff had the sole right to determine when and what advertising was to be furnished under the written contract. At the close of the trial the defendant requested a ruling that as matter of law the evidence was insufficient to warrant a finding for the plaintiff, and rulings in substance that the contract was so indefinite that it could not be enforced legally and was void as being without consideration. The first requested ruling was denied by the judge. The second class of rulings was denied by the judge with a statement that it "is true that the meaning of 'Dated Laundered Shirt' cannot be arrived at from the words themselves. Parol evidence was presented which explained the meaning. The conduct of the parties and what was

done during the year of its admitted existence gave further explanation of its meaning and terms." In response to other requested rulings of similar character the judge in denying them stated that the plaintiff could not escape liability for failure to perform the contract, that its promise was definite and enforceable. The judge also ruled that there was evidence to warrant a finding that the contract was terminated by agreement of the parties, but found that it was not so terminated. The judge found for the plaintiff and assessed damages.

The principal contention of the defendant is based upon the ground that the contract was too vague and indefinite to be capable of being enforced, being silent as to essential terms, that its express terms were not ambiguous, and that its language was not doubtful in meaning. While it is settled as matter of substantive law that a contract in writing cannot be varied by parol evidence, nevertheless for the purpose of applying the terms of such a contract to the subject matter, and of removing or explaining any uncertainty or ambiguity which arises from such application, parol evidence is admissible and has a legitimate office. *Stoops* v. *Smith*, 100 Mass. 63, 66. *Kennedy Bros. Inc.* v. *Bird*, 287 Mass. 477, 483. *Sikora* v. *Hogan*, 315 Mass. 66, 70. "The court, by the aid of extrinsic evidence, may put themselves in the situation of the parties and look at the contract from their standpoint. But from whatever source light may be thrown·upon the contract . . . its meaning, what promises it makes, what duties or obligation it imposes, is a question of law for the court." *Smith* v. *Faulkner*, 12 Gray, 251, 255. *VanBuskirk* v. *Diamond*, 316 Mass. 453, 459. As was said by the court in *Ovans* v. *Castrucci*, 267 Mass. 600, 605: "In the construction of written instruments '. . . when the language is open to doubt, and parties whose interests are diverse have from the outset adopted and acted upon a particular construction, such construction will be of great weight with the court, and will usually be adopted by it.'" See also *Atwood* v. *Boston*, 310 Mass. 70, 75, and cases cited.

Applying the rules of construction just recited to the

facts disclosed in the present case, it seems obvious that the words "'Dated Laundered Shirt' exclusive Franchise" would be meaningless as to the rights conferred thereby and the obligations undertaken thereunder without the aid of parol evidence, that the evidence was properly admitted in aid of the construction of the contract, and that there was no error in the denial of the defendant's requested rulings to the effect that the contract was too vague and indefinite to be enforceable, and void as being without consideration. The testimony of the vice-president of the plaintiff with respect to the "written" contract did not aid the defendant in the light of the actual conduct of the parties in pursuance of their understanding of the contract. Notwithstanding that evidence, the true construction and meaning of the contract still remained a question of law for the judge on all the evidence. *Tritsch* v. *Ayer Tanning Co. Inc.* 316 Mass. 598. We perceive no error of law in the conclusion reached by the judge in interpreting the contract. It is consistent with the meaning placed upon it by the parties themselves as evidenced by their conduct thereunder.

The other requested rulings of the defendant that he has argued require no discussion. We have examined them and discover no error.

*Order dismissing report affirmed.*