JOSEPHINE LACOUTURE *vs.* ROLAND O. RENAUD & another.

Middlesex.     October 5, 1949. — November 10, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Landlord and Tenant*, Construction of lease, What premises let. *Evidence*, Extrinsic affecting writing.

A lease by the owner of a house and grocery store, describing the leased premises as "The store . . . occupied by me as a grocery store and the contents of which has this day been conveyed to the" lessee, and delivered to the lessee with a bill of sale of the contents of the store

and of the good will of the business, in view of ambiguity and uncertainty which arose from the omission of any mention of a cellar under the house in the description of the leased premises, was construed liberally in favor of the lessee and in the light of evidence showing that a part of the cellar was designed to be used in conjunction with the store and for a long period had been so used by the lessor, and that the lessor had acquiesced in a similar use thereof by the lessee; and was held to include that part of the cellar as a part of the premises leased.

BILL IN EQUITY, filed in the Superior Court on April 5, 1948.

The suit was heard by *Dowd*, J.

*J. E. Angoff*, (*E. T. Simoneau* & *P. F. Shaughnessy* with him,) for the plaintiff.

*S. Kunen*, for the defendants.

RONAN, J. This is an appeal from a final decree dismissing a bill in equity alleging various grounds for relief but now restricted by the plaintiff to seeking damages and a permanent injunction to restrain the defendants from occupying a portion of a cellar in maintaining a grocery store which the defendants conduct upon premises owned by the plaintiff. The plaintiff contends that the defendants use and occupy such portion of the cellar without any right or authority.

The facts found by the judge and which we ourselves find are now recited. The plaintiff owns a two and one half story house, with a cellar underneath, which was designed and occupied as two tenements. Some years ago a two and one half story addition was erected extending the front of the house to the street. The first floor was occupied as a store and over it was another tenement. The floor of the store was about a foot above the street level, and in the rear of the store was a door which led down one step into the cellar or basement. A partition running lengthwise of the cellar divided it into two parts. The only door leading to the cellar from the outside was located in the front part of the cellar. Apart from the store, no tenant had any access to the cellar from the inside of the structure except the tenant on the first floor, and he had access only to the

rear part of the cellar. This rear part of the cellar apparently went with that tenement. The plaintiff had conducted the store for nearly fourteen years prior to selling the personal property[1] and leasing the store to the defendants by a bill of sale and lease dated January 2, 1946. The front part of the cellar was during these fourteen years in the exclusive possession of the plaintiff. The male defendant, who was a nephew of the plaintiff, was familiar with the premises before this date, and since the summer of 1945 had been employed there as a clerk. The front part of the cellar had always been used in conjunction with the grocery business. Tonic, canned goods, and other merchandise were stored there and subsequently put on the shelves in the store. Soon after the execution of the bill of sale and lease, the plaintiff's husband removed from this front part of the cellar certain personal property belonging to him and built a tool house in which to store it. He had placed an oil barrel against the outside door barring all access to the cellar from the outside when the store was conducted by his wife, and the male defendant, after the store was leased, placed a bolt upon this door in order to protect the mer- chandise which he stored in the front part of the cellar. He continued to use the same space in the cellar as the plaintiff had but he stored more goods there. He removed all the old wooden shelving in the store and made very extensive changes in the equipment, and finally in January, 1947, he replaced the oil stove located in the store by a heater which he installed in the front part of the cellar.

The demised premises were described in the lease in these words: |'The store formerly occupied by me as a grocery store and the contents of which has this day been conveyed to the lessees, located at #86 Broad Street in said Marlborough." |The question is whether the parties

---

[1] This bill of sale bore the same date as the lease and was of "All in [*sic*] singular, each and every article of personal property consisting of stock in trade, showcases, shelfing and equipment now contained in the grocery store now conducted by" the grantor, with an immaterial exception, and purported also to convey "the good will of the said business heretofore conducted by me." — REPORTER.

intended to include the front part of the cellar in this description. The meaning to be given to this clause of the lease is to be ascertained from the circumstances attending its execution in so far as they shed any light upon the intention of the parties with respect to the area demised. *Crystal Concrete Corp.* v. *Braintree*, 309 Mass. 463, 468. *Evans* v. *Sack*, 320 Mass. 84, 85.

The parties to the lease contemplated the continuance of the plaintiff's grocery business by the defendants. The bill of sale expressly conveyed the good will and an option to sell the business back to the plaintiff if, during the term of the lease, the defendants desired to sell and if their son did not wish to purchase it. The same business was to be carried on by the defendants at the old site of the business. The site was that which had been occupied by the plaintiff when she conducted the store. All parties were familiar with the extent and bounds of the premises that had been used for the purposes of maintaining the store. Furthermore, the physical arrangement of the property itself shows that the front part of the cellar was designed to be used in conjunction with the grocery business. *Houghton* v. *Moore*, 141 Mass. 437, 439. Nowhere in the evidence is there a suggestion that the door from the store to this part of the cellar was not intended for access from the store to the cellar, or that the defendants were not entitled to use this door, or that it was ever locked. In the next place, the plaintiff acquiesced in the use of the cellar by the defendants, and she or her husband sought and secured permission from the defendants when it became necessary for them to enter the front part of the cellar where a water meter and shut-off were located in the service pipe which furnished water to the entire premises. The practical construction of the lease by the parties is persuasive evidence as to what they intended by the description contained in the lease. *New York Central Railroad* v. *Stoneman*, 233 Mass. 258, 263. *Crowe* v. *Bixby*, 237 Mass. 249, 253. *Ovans* v. *Castrucci*, 267 Mass. 600, 605. It is true that the lease makes no mention of the cellar. The lease must be construed as of the time of its

delivery; and where, as here, the lease contains a latent ambiguity in applying it to the subject matter, the facts which we have just stated were admissible not for the purpose of altering or contradicting the lease but as an aid and assistance in removing or explaining any uncertainty or ambiguity that arises from applying the lease to the land. *Stoops* v. *Smith*, 100 Mass. 63, 65, 66. *Kennedy Bros. Inc.* v. *Bird*, 287 Mass. 477, 483. *Atwood* v. *Boston*, 310 Mass. 70. *Maxwell-Davis, Inc.* v. *Hooper*, 317 Mass. 149, 152. It is plain, without relying upon the suggestion stated in *Carpenter* v. *Pocasset Manuf. Co.* 180 Mass. 130, 133, *Watts* v. *Bruce*, 245 Mass. 531, 534, and *Standard Sanitary Manuf. Co.* v. *Hartfield Realty Co.* 284 Mass. 540, 546, that a liberal construction is to be given in favor of the lessee where the terms are uncertain and of doubtful meaning, that it was the intent and purpose of the parties that the front part of the cellar was regarded as an integral part of the store and was intended to be included in the description of the demised premises. *Jewett* v. *Steer*, 6 Cush. 99, 101. *Sargent* v. *Adams*, 3 Gray, 72, 77, 80. *Eastman* v. *Perkins*, 111 Mass. 30. *Hooper* v. *Farnsworth*, 128 Mass. 487, 488. *Boston* v. *Gray*, 144 Mass. 53. *Case* v. *Minot*, 158 Mass. 577. *Arafe* v. *Howe*, 228 Mass. 46, 50. Compare *Goldsmith* v. *Traveler Shoe Co.* 221 Mass. 482; *Calabresa* v. *Lynch*, 271 Mass. 58, where the tenant by virtue of the terms of the lease did not acquire exclusive possession of a part of the premises not mentioned in the lease and which could not be brought within the description employed by any reasonable construction of the lease.

As we are of opinion that the front portion of the cellar was included within the description of the demised premises appearing in the lease, we need not decide the conflicting contentions as to whether or not this portion of the cellar passed as an appurtenance to the store.

*Decree affirmed with costs.*